[No. B236361. Second Dist., Div. Five. Oct. 25, 2012.]

HILLEL CHODOS, Plaintiff and Appellant, v.
DANA M. COLE et al., Defendants and Respondents.

694

**Counsel**

Hillel Chodos, in pro. per., for Plaintiff and Appellant.

The Law Offices of Ronald Richards & Associates, Ronald Richards and Nicholas Bravo for Defendant and Respondent Dana Cole.

Wilson, Elser, Moskowitz, Edelman & Dicker, Steven J. Joffe, Robert Cooper and Craig C. Hunter for Defendants and Respondents Michael D. Dempsey, Stephen C. Johnson and Dempsey & Johnson.

OPINION

MOSK, J.—

## INTRODUCTION

A cross-complaint was filed against Attorney Hillel Chodos (Chodos) and another attorney for malpractice in connection with their representation in, and settlement of, a marital dissolution and related proceedings. Chodos cross-complained against other attorneys for indemnification for any malpractice award against him because, he alleged, those other attorneys had rendered advice concerning, reviewed, and approved the settlement of the dissolution and related proceedings. The attorneys successfully moved to strike Chodos's cross-complaint under Code of Civil Procedure section 425.16—the anti-SLAPP (strategic lawsuit against public participation) statute.[1] Chodos appeals from those orders and from the orders awarding attorney fees against him. We reverse the orders striking the cross-complaint. We hold that the claim does not involve activity protected by the anti-SLAPP statute. We also hold that Chodos did not have to supply a reporter's transcript of the argument before the trial court because we review the matter de novo, the trial court said it relied only on the papers submitted, and none of the parties relies on anything that occurred during that argument.

## BACKGROUND

Chodos, a lawyer, and his former cocounsel, Hugh John Gibson, sued a former client, Navabeh P. Borman, for fees owing for their representation of her in marital dissolution proceedings and a related "*Marvin*" action.[2] Chodos and Gibson alleged in their complaint that despite the fact that Ms. Borman became mistrustful of them and their advice, and actually engaged three separate and independent lawyers to review their handling of her cases and to give her independent advice, Chodos and Gibson procured a settlement for Ms. Borman that she accepted. Chodos and Gibson claimed that Ms. Borman's verbal agreement to pay their hourly rate was modified to provide for a contingency fee. Chodos and Gibson alleged Ms. Borman never paid them any attorney fees or costs advanced and refused to pay any attorney fees. They alleged that they did receive $215,000 from Mr. Borman as a result of a court order and credited that amount against attorney fees and costs owed by Ms. Borman. Chodos and Gibson sought unpaid attorney fees in the amount of $3.5 million or according to proof.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] *Marvin v. Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106].

Ms. Borman, represented by Michael D. Dempsey and Dempsey & Johnson (sometimes collectively Dempsey), cross-complained against Chodos and Gibson for attorney malpractice in the handling of the underlying marital dissolution action and the *Marvin* action, including claims that, inter alia, Chodos and Gibson failed to prepare, misrepresented the terms of the proposed settlement prior to the execution, failed to enforce interim court orders, and failed to advise Ms. Borman on various issues. She also alleged conversion of property.

Chodos answered, denying liability, and filed a cross-complaint against Dana M. Cole (Cole), Stephen C. Johnson, Michael D. Dempsey, and Dempsey & Johnson for equitable indemnity. Chodos alleged that they acted as Ms. Borman's concurrent, independent advisers and independent counsel while Chodos and Gibson represented her of record in the underlying marital dissolution proceedings and the *Marvin* action. He further alleged that Cole and Dempsey independently reviewed the proposed settlement; recommended to Ms. Borman that she accept it; and that she did so, not in reliance on the advice of Chodos or Gibson, whom she did not trust, but rather in reliance on the advice and recommendation of Cole and Dempsey. Thus, Chodos sought equitable indemnification for any amounts found to be due Ms. Borman on account of his alleged malpractice.

Cole filed a motion under section 425.16 (anti-SLAPP motion) to strike Chodos's cross-complaint for equitable indemnity on the ground the cross-complaint "arose from" protected activity. Dempsey filed a separate but similar anti-SLAPP motion.

The trial court granted both anti-SLAPP motions. Cole then submitted a request for attorney fees and costs totaling $42,622.50, and the trial court awarded Cole $37,935 in attorney fees and costs. Dempsey submitted a separate request for attorney fees and costs totaling $51,069.20, and the trial court awarded to Dempsey $21,500.

Chodos appealed from the orders granting the anti-SLAPP motions and the award of attorney fees. As a result of enforcement proceedings by Cole and Dempsey, Chodos paid the attorney fees awards in full under protest, reserving his claims on appeal.

## PROCEDURAL ISSUES

After the court granted the two anti-SLAPP motions and Cole's attorney fees motion, Chodos filed a single notice of appeal. In his notice of appeal, Chodos identified the two anti-SLAPP motion rulings as well as the two rulings on the attorney fees motions. Although the anti-SLAPP motion rulings

and the attorney fees award in Cole's favor had been entered before Chodos filed his notice of appeal, the attorney fees award in favor of Dempsey had not been entered as of the time Chodos filed his notice of appeal. As a result, Dempsey filed a motion to dismiss Chodos's appeal as to the attorney fees award because Chodos had failed to file a separate notice of appeal within 60 days after a file-stamped copy of that attorney fees order was served. We denied the motion to dismiss the appeal on this jurisdictional ground.

In addition, Dempsey and Cole argued and also moved that Chodos's entire appeal should be dismissed based on Chodos's failure to present an adequate record on appeal. They argued that Chodos's failure to designate any of the reporter's transcripts for the four motions that are the subject of this appeal precluded this court from examining the record. Although we denied the request to dismiss the appeal, we noted that "the failure to provide an adequate record warrants affirmance." We sent out a request for further briefing as to the adequacy of the record, taking into account the omitted reporter's transcripts and certain pleadings, and as to whether a timely notice of appeal had been filed with respect to the order for attorney fees in favor of Dempsey.

Chodos takes the position that he is not relying on anything that occurred at the hearings or in the missing documents, and therefore there is an adequate record. He also asserts that the notice of appeal sufficiently covered the later-filed orders on attorney fees.

In this case, Chodos's appeal as to the attorney fees awarded Dempsey was based on the amount of the fees. The determination of the amount of the fees was made after the notice of appeal was filed. Whether the notice of appeal encompassed the postjudgment determination of attorney fees (compare *Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688 [118 Cal.Rptr.3d 581] with *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993 [3 Cal.Rptr.2d 654]) is an issue we need not reach because we reverse the orders striking the cross-complaint.

## DISCUSSION

### A.  *Appealability and Standard of Review*

An order granting a special motion to strike under section 425.16 is directly appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).) We review de novo the trial court's order granting an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326 [46 Cal.Rptr.3d 606, 139 P.3d 2]; *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322–1323 [81 Cal.Rptr.3d 866].) We do not weigh the evidence; rather, we accept as true

evidence favorable to Chodos, and evaluate evidence favorable to the moving parties, to determine whether as a matter of law, it defeats Chodos's evidence. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30]; *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279 [55 Cal.Rptr.3d 544].)

### B.  *Adequacy of Record and Brief*

The only submissions to the trial court were the papers filed in support of and in opposition to the anti-SLAPP motions. There is no indication that witnesses testified or evidentiary issues arose at the hearing. The trial court in its order granting the anti-SLAPP motions stated, "After carefully considering the moving papers, the opposition, the declarations in opposition and in support, the exhibits, the Court grants the respective motions to strike pursuant to Code of [Civil Procedure section] 425.16 . . . ." The legal issues decided were whether Chodos's cross-complaint is covered by the anti-SLAPP statute and whether the claim has sufficient merit to survive the anti-SLAPP motions. We reach only the issue of whether the claim is protected by the anti-SLAPP statute. We do not reach the issues regarding attorney fees.

■  California Rules of Court, rule 8.120(b) requires a reporter's transcript on appeal only if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court . . . ." California Rules of Court, rule 8.130(a)(4) provides that an appellant may "elect[] to proceed without a reporter's transcript."[3] None of the parties relies upon the oral argument before the trial court, and we decide a purely legal issue based on the filings before the trial court—as did the trial court. And, as noted, we review that trial court decision de novo. If we did determine that a reporter's transcript was necessary "to prevent a miscarriage of justice," we could, on our own, order the record augmented with a reporter's transcript, with the cost to be borne by the appellant. (Cal. Rules of Court, rules 8.130(a)(4), 8.155.)[4]

In *Martin v. Inland Empire Utilities Agency, supra*, 198 Cal.App.4th 611, the court held that the defendant's failure to supply a reporter's transcript on appeal resulted in an inadequate record on the attorney fees issue. Here, we do not reach the issue of attorney fees. Other cases concerning the inadequacy of the record on appeal are not applicable to this case. For example,

---

[3] Under Los Angeles Superior Court Policy Regarding Normal Availability of Official Court Reporters and Privately Arranged Court Reporters, effective May 15, 2012, the availability of court reporters has been limited.

[4] To the extent Chodos's appendix omits certain pages from the pleadings, we have obtained copies of those documents from Chodos, and on our own motion we take judicial notice of those documents (*Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 621, fn. 5 [130 Cal.Rptr.3d 410]), and conclude that none of them is relevant to this appeal.

in *Maria P. v. Riles* (1987) 43 Cal.3d 1281 [240 Cal.Rptr. 872, 743 P.2d 932], our Supreme Court said that a reporter's transcript on appeal or a settled statement was required with regard to an attorney fees award because the court could not determine "whether the trial court based its award on the lodestar adjustment method." (*Id.* at p. 1295.) Similarly, in *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440 [94 Cal.Rptr.2d 143], a transcript of the proceedings was necessary to review a trial court's determination of the reasonableness of an attorney fees order. (*Id.* at p. 447.) And in *In re Kathy P.* (1979) 25 Cal.3d 91 [157 Cal.Rptr. 874, 599 P.2d 65], the court held that a juvenile defendant failed to provide an adequate record on appeal in order to determine if she had been advised of her right to counsel. (*Id.* at p. 102.)

We do not believe existing Supreme Court authority requires a transcript of the hearing in connection with whether the anti-SLAPP statute applies to a specific pleading. The cases do not challenge the above quoted California Rules of Court.

Cole asserts that Chodos has not in his opening brief set forth an adequate summary of the facts. (Cal. Rules of Court, rule 8.120(a)(1)(C).) Chodos, however, has set forth facts sufficient for the issue we decide.

### C. *Legal Principles with Regard to Anti-SLAPP Motions*

" 'A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].)" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 34 [64 Cal.Rptr.3d 348].) "The goal [of section 425.16] is to eliminate meritless or retaliatory litigation at an early stage of the proceedings." (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 806 [119 Cal.Rptr.2d 108].)

Section 425.16, subdivision (b)(1) provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) In considering the application of the

anti-SLAPP statute, courts engage in a two-step process. " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712 [54 Cal.Rptr.3d 775, 151 P.3d 1185].) " ' " 'The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]' [Citation]." [Citations.]' " (*Rohde v. Wolf, supra*, 154 Cal.App.4th at pp. 34–35.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703]; see *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].)

"To demonstrate a probability of prevailing on the merits, the plaintiff must show that the complaint is legally sufficient and must present a prima facie showing of facts that, if believed by the trier of fact, would support a judgment in the plaintiff's favor. [Citations.] The plaintiff's showing of facts must consist of evidence that would be admissible at trial. [Citation.] The court cannot weigh the evidence, but must determine whether the evidence is sufficient to support a judgment in the plaintiff's favor as a matter of law, as on a motion for summary judgment. [Citations.]" (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1346 [63 Cal.Rptr.3d 798]; see *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719, fn. 5 [34 Cal.Rptr.2d 898, 882 P.2d 894]; *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585 [132 Cal.Rptr.2d 789].)

In this case, Chodos claims indemnity for an attorney malpractice claim based on the representation of Ms. Borman by Cole and Dempsey. Specifically, Chodos asserts that if the settlement he negotiated was the result of attorney malpractice, the malpractice was not committed by him or Gibson, but rather by one or both of the cross-defendants Cole and Dempsey, who "independently reviewed and approved" the settlement and "concurred in the propriety of said settlement and its benefit to defendant [(Ms. Borman)], and advised her to accept it, and on whose advice she relied in deciding to accept it." Chodos's indemnity claim does not seek relief specifically based on the substitution of Cole or Dempsey as counsel for Ms. Borman or any of their filings. The only relief Chodos seeks is a determination that if he is liable for attorney malpractice in connection with Ms. Borman's settlement agreement, Cole and Dempsey, by virtue of their review and approval of the settlement agreement in issue, should indemnify him for any amount he is found obligated to pay Ms. Borman. Chodos asserts that his claims are limited strictly to the issue of his, Dempsey's, and Cole's alleged attorney malpractice.

The authorities have established that the anti-SLAPP statute does not apply to claims of attorney malpractice. As stated in one authoritative work, "California courts have held that when a claim [by a client against a lawyer] is based on a breach of the fiduciary duty of loyalty or negligence, it does not concern a right of petition or free speech, though those activities arose from the filing, prosecution of and statements made in the course of the client's lawsuit. The reason is that the lawsuit concerns a breach of duty that does not depend on the exercise of a constitutional right." (4 Mallen & Smith (2012 ed.) Legal Malpractice, § 37:11, pp. 1460–1461, fns. omitted; see 1 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 7:644, pp. 7(II)-15 to 7(II)-16 (rev. # 1, 2012).) Even though the "petitioning activity is part of the evidentiary landscape within which [claimant's] claims arose, the gravamen of [claimant's] claims is that [the former attorney] engaged in nonpetitioning activity inconsistent with his fiduciary obligations owed to [claimant] . . . ." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272 [99 Cal.Rptr.3d 805].)

In *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532 [52 Cal.Rptr.3d 712], the plaintiffs retained a law firm to file suit against their neighbors for constructing property improvements in violation of covenants, conditions, and restrictions. The plaintiffs lost the case and then filed an attorney malpractice action against the firm. The firm filed an anti-SLAPP motion, which the trial court denied. The Court of Appeal affirmed, stating, "Our interpretation of the 'arising from' requirement of section 425.16, subdivision (b), is consistent with the anti-SLAPP statute's express purpose: 'The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.' . . . [¶] A malpractice claim focusing on an attorney's incompetent handling of a previous lawsuit does not have the chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute. In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so. Instead of chilling the petitioning activity, the threat of malpractice encourages the attorney to petition competently and zealously. This is vastly different from a third party suing an attorney for petitioning activity, which clearly could have a chilling effect." (*Id.* at pp. 1539–1540, citation omitted.)

Other cases come to the same conclusion. In *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 [20 Cal.Rptr.3d 621], the court

held that the anti-SLAPP statute did not apply to a client's action against a law firm for breach of loyalty. In *Freeman v. Schack* (2007) 154 Cal.App.4th 719 [64 Cal.Rptr.3d 867], the court held that the anti-SLAPP statute did not apply to an alleged breach of fiduciary duty of a law firm to its client. (See *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566 [104 Cal.Rptr.3d 628] [anti-SLAPP statute did not apply to claim against attorney and expert for pressuring and deceiving plaintiff into settlement so they could market a new safety device]; *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204 [102 Cal.Rptr.3d 245] (*PrediWave*) [anti-SLAPP statute does not apply to client's claim against attorneys for a conflict of interest and negligence]; *Hylton v. Frank E. Rogozienski, Inc., supra*, 177 Cal.App.4th at p. 1274 ["claims allude to [the attorney's] petitioning activity, but the gravamen of the claim rests on the alleged violation of [the attorney's] fiduciary obligations to Hylton by giving Hylton false advice to induce him to pay an excessive fee to [the attorney]"]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624 [7 Cal.Rptr.3d 715] (*Jespersen*) [malpractice by failing to respond to discovery requests and comply with court orders not covered by anti-SLAPP statute]; cf. *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 809 [63 Cal.Rptr.3d 575] [claims of sellers of real estate in connection with denial of street access not subject to anti-SLAPP statute even though they raise collateral or incidental facts with respect to conduct covered by the anti-SLAPP statute]; but see *Mindys Cosmetics, Inc. v. Dakar* (9th Cir. 2010) 611 F.3d 590, 598 ["no categorical exclusion of claims of attorney malpractice from the anti-SLAPP statute"].)

As stated by the court in *PrediWave, supra*, 179 Cal.App.4th at page 1228, "We recognize that the [anti-SLAPP] statute makes '[a] cause of action against a person arising from *any act of that person in furtherance of the person's* [constitutional] right of petition or free speech . . . in connection with a public issue . . . subject to a special motion to strike' . . . . Although this statutory language has been interpreted broadly to protect qualifying statements made or conduct undertaken by a person on another person's behalf against a cause of action by a third person . . . , it is unreasonable to interpret this language to include a client's causes of action against the client's own attorney arising from litigation-related activities undertaken for that client. 'The cardinal rule of statutory construction is to ascertain and give effect to the intent of the Legislature. . . .' Although a broad interpretation of the anti-SLAPP statute is statutorily mandated . . . , an overly broad interpretation of section 425.16, subdivision (b), that includes such client lawsuits unreasonably expands the language beyond the clear legislative purpose and leads to absurd results." (Citations omitted.)

■ For purposes of the anti-SLAPP statute, a claim by an attorney against other attorneys for equitable indemnity in connection with a claim of attorney malpractice is not distinguishable from a client's claim against an

attorney for malpractice. The claim for indemnity is still grounded in allegations of attorney malpractice. Indemnity and malpractice may be different causes of action, but that does not mean that the claim for indemnification based on malpractice should be treated differently than a malpractice claim for purposes of whether the anti-SLAPP statute is applicable.

The principal basis of Chodos's claim concerns conduct constituting a breach of *professional duty*, not statements or filings made in connection with litigation. There is only one claim of indemnity based on alleged malpractice, not a mixed claim as asserted by Dempsey.

Attorney malpractice cases to which the anti-SLAPP statute has been held not to apply have involved a client suing a former attorney who represented that client. It has been stated that acts by attorneys when they have not represented the plaintiff are subject to the anti-SLAPP statute. The court in *PrediWave, supra*, 179 Cal.App.4th at pages 1221 and 1227–1228 drew a distinction between a client's cause of action against an attorney's acts on behalf of that client and a cause of action by a third person for "statements made or conduct undertaken by a person on another person's behalf." (*Id.* at p. 1228; see *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 157–158 [143 Cal.Rptr.3d 17].) The court said that a client's action against an attorney for acts on behalf of the client "[is] not being brought 'primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition . . . .' (§ 425.16, subd. (a).)" (*PrediWave, supra*, 179 Cal.App.4th at p. 1227.) The court in *PrediWave* held that the anti-SLAPP statute does not apply to a claim by a client against former attorneys for breaches of their duties by, inter alia, negligence and conflicts of interest.

In *Thayer v. Kabateck Brown Kellner LLP, supra*, 207 Cal.App.4th 141, the plaintiff sued the defendant attorneys based on their disposition of her husband's settlement proceeds from a class action. The plaintiff was not a client of the attorneys. The causes of action were fraud, tortious interference, violations of certain statutes, declaratory relief, conversion, and breach of trust. There was no cause of action for malpractice. The court held that the anti-SLAPP statute applied to the plaintiff's claims against the attorneys. The court did say that only claims "brought by former clients against their former attorneys based on the attorneys' acts on behalf of those clients—may not be within the ambit of SLAPP." (*Id.* at p. 158.) The court, however, went on to observe that the plaintiff was not a client "[a]nd no malpractice claim was alleged." (*Ibid.*)

The types of actions cited by the court in *PrediWave, supra*, 179 Cal.App.4th at pages 1220 and 1228 as third party actions subject to the anti-SLAPP statute involved either claims for allegedly false statements made

on behalf of others (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 ·Cal.4th 1106 [81 Cal.Rptr.2d 471, 969 P.2d 564] [anti-SLAPP statute applied to claims of residential property owners against a tenant counseling service for false and defamatory statements]) or claims against an attorney for abuse of process in representing others to collect a judgment (*Rusheen v. Cohen, supra,* 37 Cal.4th 1048 [anti-SLAPP statute applies to claims against an attorney representing an adversary in connection with collection activities]). The claims in those cases are significantly different than the claim in this case.

█ All of the authorities hold that a "garden-variety" claim for attorney malpractice (*Jespersen, supra,* 114 Cal.App.4th at p. 632) is not covered by the anti-SLAPP statute. Those authorities should apply here, and there should be no distinction between cases against a former attorney and cases such as this one. In determining whether the anti-SLAPP statute applies, the court must focus on the act which defines the "*principal thrust* or *gravamen*" of the cause of action (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494]; see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 [124 Cal.Rptr.2d 519, 52 P.3d 695]). Because a client's action *against an attorney for a breach of duty by an act of malpractice* is not subject to the anti-SLAPP statute, logically Chodos's action based on a *breach of duty by an act of malpractice* likewise should not be subject to the anti-SLAPP statute. The conduct of an attorney for purposes of the anti-SLAPP statute is the same as to the case of a client's claim against a former attorney and as it is to the claim here for indemnification. If an act of malpractice by an attorney alleged by a client is not petitioning or free speech under the anti-SLAPP statute, that same act for the same client should not be deemed to be such petitioning or free speech solely because it is the basis of a claim for indemnity by someone other than the client.

Cole and Dempsey rely upon *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482 [72 Cal.Rptr.3d 847] (*Taheri*), in which one attorney brought an action against another for interference with contractual relations based on claims of improper solicitation of the client during pending litigation. The trial court granted an anti-SLAPP motion to strike by the defendant attorney, and the Court of Appeal agreed because the complaint "plainly shows it arose from . . . communications with [the client] about pending litigation, and from . . . conduct in enforcing the settlement agreement on [the client's] behalf." (*Id.* at p. 489.) The court specifically distinguished *Jespersen, supra,* 114 Cal.App.4th 624 because that case concerned an attorney malpractice action, rather than direct communications concerning a pending lawsuit. (*Taheri, supra,* 160 Cal.App.4th at p. 489.)

We deal with a claim based on a breach of duty—malpractice—and not with a claim based on direct communications concerning a lawsuit. Moreover, the court in *Taheri, supra*, 160 Cal.App.4th 482 appeared to find that the plaintiff's claims fell within the anti-SLAPP statute because they were based upon "conduct in enforcing the settlement agreement." (*Id.* at p. 489.) In that case, the conduct complained of by plaintiff attorney included a motion filed by defendant attorney to enforce a settlement agreement on behalf of the client. (*Id.* at p. 486.) Regardless of whether *Taheri* was correctly decided, those are not the facts here.

■ Malpractice involves a breach of duty by neglecting to do an act or doing an act, not the right of petition. The claim here does not concern petitioning activity at all. Cases cited by Cole and Dempsey in which the anti-SLAPP statute was applied are not applicable here. (See, e.g., *Navellier v. Sletten, supra*, 29 Cal.4th at p. 89 [a claim for inducing with false statements a release or settlement]; *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 842 [36 Cal.Rptr.3d 385] [negotiating a claim for fraud by inducing a stipulated judgment and default under it]; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1408–1409,1420 [103 Cal.Rptr.2d 174] [a stipulated settlement and an issuance of a letter while representing a client in a pending action, and claims of defamation, misrepresentation, and infliction of emotional injury].)

■ Cole and Dempsey invoke the litigation privilege set forth in Civil Code section 47, subdivision (b). That section is not coextensive with the first prong of the anti-SLAPP statute. (*Flatley v. Mauro, supra*, 39 Cal.4th at p. 323; *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1262–1263 [73 Cal.Rptr.3d 383].) If the privilege is applicable, it would be considered under the second prong of the anti-SLAPP statute—likelihood of success on the merits—only if the activity was protected under the first prong of the anti-SLAPP statute. (*Neville v. Chudacoff, supra*, 160 Cal.App.4th at p. 1263, fn. 7.) As we conclude that the activity is not protected, we do not need to reach the litigation privilege issue. (*Robles v. Chalilpoyil, supra*, 181 Cal.App.4th at p. 582.)

The orders granting the motions to strike are erroneous. In reversing, we do not reach the issues regarding attorney fees because Cole and Dempsey are not entitled to attorney fees in connection with the orders granting the motions to strike.

## DISPOSITION

The orders granting the motions to strike and awarding attorney fees under section 425.16 are reversed. Chodos shall recover his costs on appeal.

Armstrong, J., concurred.

**TURNER, P. J.,** Dissenting.—

## I.  INTRODUCTION

I would affirm. The record does not comply with requirements imposed in Supreme Court authority. And in my view the gravamen of the equitable indemnity cross-complaint are written and oral statements made in the course of litigation; all of these written and oral statements are subject to the litigation privilege; and as to one set of cross-defendants, equitable indemnity in the legal malpractice context is unavailable. I would dismiss the appeal from the amount of the attorney fee award entered in favor of cross-defendants, Michael D. Dempsey, Stephen C. Johnson and their law firm, Dempsey & Johnson PC. We have no jurisdiction to consider the amount of the attorney fee award as to them—that order is final. I would affirm the attorney fee award as to cross-defendant, Dana M. Cole.

## II.  ABSENCE OF A SETTLED STATEMENT OR REPORTER'S TRANSCRIPT

In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided. (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 273–274 [279 Cal.Rptr. 576, 807 P.2d 418] [transfer order]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932] [attorney fee motion hearing]; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575 [224 Cal.Rptr. 664, 715 P.2d 624] (lead opn. of Grodin, J.) [new trial motion hearing]; *In re Kathy P.* (1979) 25 Cal.3d 91, 102 [157 Cal.Rptr. 874, 599 P.2d 65] [hearing to determine whether counsel was waived and the minor consented to informal adjudication]; *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1672 [26 Cal.Rptr.3d 638] [transcript of judge's ruling on an instruction request]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [94 Cal.Rptr.2d 143] [trial transcript when attorney fees sought]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [89 Cal.Rptr.2d 618] [surcharge hearing]; *Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657 [56 Cal.Rptr.2d 700] [nonsuit motion where trial transcript not provided]; *Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126] [monetary sanctions hearing]; *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532 [254 Cal.Rptr. 492] [reporter's transcript fails to reflect content of special instructions]; *Buckhart v. San Francisco Residential Rent etc. Bd.* (1988) 197 Cal.App.3d 1032, 1036 [243 Cal.Rptr. 298] [hearing on Code Civ. Proc., § 1094.5 petition]; *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385–386 [209 Cal.Rptr. 449] [motion to dissolve preliminary injunction hearing]; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 713–714 [152 Cal.Rptr. 65] [demurrer hearing]; *Calhoun v. Hildebrandt* (1964) 230

Cal.App.2d 70, 71–73 [40 Cal.Rptr. 690] [transcript of argument to the jury]; *Ehman v. Moore* (1963) 221 Cal.App.2d 460, 462 [34 Cal.Rptr. 540] [failure to secure reporter's transcript or settled statement as to offers of proof]; *Wetsel v. Garibaldi* (1958) 159 Cal.App.2d 4, 10 [323 P.2d 524] [order confirming arbitration award].)

At oral argument, the absence of a settled statement or a reporter's transcript was raised with one of the plaintiffs, Hillel Chodos. Mr. Chodos had been repeatedly advised in written communications by the clerk of this court, made at the behest of a justice, of the need for a reporter's transcript or suitable substitute. Mr. Chodos, the foregoing authority notwithstanding, indicated there was no need for additional transcripts.[1] In response to Mr. Chodos's claim he would be unable to make an augmentation motion just prior to oral argument, the undersigned stated, "I have never denied a request to augment the record to include exhibits, transcripts—sometimes we get transcripts after the cause is submitted and all those things happen so that assumption in my perspective, sir, is incorrect." In terms of whether something was missing from the reporter's transcript, at oral argument, counsel for cross-defendant, Dana M. Cole, explained that it would be improper for him to refer to matters outside the record: "I want to address the contention on the inadequate record. On page 2 of our respondents' brief and our supplemental brief we certainly advanced this issue and cited controlling California Supreme Court authority on failing to provide a reporter's transcript and it would be improper for us to tell you what was in the reporter's transcript or what was missing because we would be quoting things outside the record. I merely cite many different examples of . . . dealing with affirmance as a matter of law because of an inadequate reporter's transcript and I don't want to belabor my point—I just want to tell the court that we did preserve this issue and responded forcefully in our supplemental brief as well when the court asked for further briefing." (This issue was also pursued in briefing by Mr. Cole and the remaining three cross-defendants, Mr. Dempsey, Mr. Johnson and their law firm.)

I agree with cross-defendants that the orders under review should be affirmed on the absence of adequate record grounds. There is no agreement between the parties as to what occurred in the trial court. We have no idea as

---

[1] At oral argument, Mr. Chodos, in response to questioning from the bench stated: "On the question of the reporter's transcript, obviously I'm not trying to save a hundred dollars three hundred dollars for the transcripts. I did not include them and did not obtain them because I was satisfied nothing was said at the hearings had any bearing on the issue of this appeal. Now when the issue came up, I did not understand that I would be able to provide a reporter's transcript belatedly, and therefore I did not do so. But I will remind Your Honor that there has never been a single suggestion anywhere either from the respondents or from the court that there is anything in these reporter's transcripts that would be significant for the court and so I thought that we had resolved the matter . . . ."

to whether evidentiary issues arose or there were concessions by either side. The burden of securing a reporter's transcript or a settled statement is de minimis, particularly given their importance in the truth-seeking function of the judiciary. Most importantly, the duty of an appellate court is to *correctly* resolve issues. The requirement of a settled statement or a reporter's transcript materially increases the integrity of the appellate process. (I am not suggesting that my colleagues' analysis lacks uprightness—the most skeptical reader of the majority opinion would agree it is an integrity-driven, thoughtful analysis.) Our task is to find the truth; nothing less. In this case without any legally correct justification, Mr. Chodos has failed to comply with his duty.

## III. SPECIAL MOTIONS TO STRIKE

### A. The Motions

Based upon the record provided, I would affirm. In determining whether a cause of action *arises* from the exercise of free speech or petition rights, we consider the pleadings and the evidence. (Code Civ. Proc.,[2] § 425.16, subd. (b)(2); *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1166 [131 Cal.Rptr.3d 478].)

### B. The Pleadings

#### 1. The complaint

According to the complaint, plaintiffs, Mr. Chodos and Mr. Gibson, were retained in 2007 by the defendant, Navabeh P. Borman. The complaint does not allege that any *written* retainer agreement was entered into between plaintiffs and the defendant. Plaintiffs agreed to represent the defendant in a marital dissolution action brought by her former spouse, Burton Borman. Mr. Chodos was to be paid $1,000 per hour and Mr. Gibson's hourly rate was $500. Mr. Gibson was required to maintain daily time records. However, Mr. Chodos, despite being paid $1,000 per hour, was not required to "maintain daily time records" but instead would merely "estimate" his time.

In March 2007, the defendant expressed a desire to reconcile with Mr. Borman. However, the reconciliation was short lived. According to the complaint, Mr. Borman did not honor his financial obligations to the defendant or to pay her attorney fees. Therefore, at her request, plaintiffs filed suit against Mr. Borman for breach of premarital promises, which the parties refer to as the "*Marvin*" action. In addition, plaintiffs alleged a cause of action against

---

[2] Future statutory references are to the Code of Civil Procedure, unless otherwise specified.

Mr. Borman's son for intentional interference with an unspecified contract. Plaintiffs also filed a second dissolution of marriage action. In the fall of 2008, the defendant informed plaintiffs that she was unable to pay their fees on a current basis. The defendant agreed though that plaintiffs were entitled to reasonable fees based on their regular hourly rates for representing her in the foregoing litigation.

According to the complaint, the defendant sought the advice of "separate and independent counsel" concerning the attorney fee issue. As a result, the complaint alleges the following agreement was entered into: "[D]efendant agreed that a reasonable fee for plaintiffs' services would not be less than their hourly fees, but since she probably would be unable to pay them unless she obtained a recovery, would be equal to 15% of any recovery for her resulting from the civil action and the marital dissolution proceeding up to $10 million, plus 20% of any additional recovery up to $25 million, plus 22.5% of any recovery in excess of $25 million."

During 2009, the defendant began to lose confidence in plaintiffs. As a result, the defendant hired three sets of attorneys: first, she hired a "separate and independent lawyer"; defendant then hired a "second separate and independent lawyer"; and then she retained a "third separate and independent lawyer specializing in tax law . . . ."

The defendant never paid any of the fees nor has she reimbursed plaintiffs $24,921.86 for out-of-pocket costs. The defendant only reimbursed plaintiffs for some but not all of their out-of-pocket costs. At some point, Mr. Borman had been ordered to pay $215,000 for the defendant's attorney fees to plaintiffs. The $215,000, which was actually paid to plaintiffs, was credited to the defendant's account.

### 2. The defendant's legal malpractice and conversion cross-complaint

On July 9, 2010, the defendant filed a legal malpractice and conversion cross-complaint against plaintiffs. Filing the cross-complaint on her behalf were the cross-defendants, Mr. Dempsey and his law firm. As will be noted, immediately after filing the cross-complaint, Mr. Chodos sued Mr. Dempsey, Mr. Johnson and their law firm. According to the defendant's cross-complaint, Mr. Chodos never meaningfully prepared either of the marital dissolution matters or the civil suit for trial. According to the cross-complaint: "[Mr.] Chodos never meaningfully 'worked up' either case or prepared for trial. He propounded almost no discovery; hired an incompetent art appraiser who inflated the values of [the Bormans'] art collection, failed and refused to prepare required joint trial submissions; failed to produce witnesses as

ordered by the court, and failed to preserve evidence so that [defendant] could proceed to trial or engage replacement counsel." As a result of plaintiffs' neglect of the litigation, the defendant hired two additional attorneys to review plaintiffs' mishandling of her cases. In addition, she hired a tax attorney to review the tax consequences of the settlement recommended by plaintiffs. According to the defendant's cross-complaint, "The litigation attorneys found that Plaintiffs had so failed to prepare the matters for trial that no attorney could step in and be able to prepare for the fast approaching trial date and that [Mr. Chodos] had previously sought continuances so as to make a request for additional time on the eve of trial highly unlikely to succeed." In addition, plaintiffs had misrepresented to the defendant that the settlement would be " 'tax free.' " In fact, the tax issues had not even been addressed by plaintiffs. In October 2009, Mr. Chodos demanded that any settlement proceeds generated from the settlement be deposited in his trust account. As a result, the defendant was forced to terminate Mr. Chodos and retain new counsel. The new attorney requested that Mr. Chodos produce the defendant's litigation file. Mr. Chodos refused to do so until he was provided notice that the defendant would seek an ex parte order to turn over her litigation file.

The first cause of action in the defendant's cross-complaint is for legal malpractice. According to the first cause of action, in both the marital dissolution and *Marvin* litigation, plaintiffs represented that they had special expertise. Plaintiffs are alleged in the defendant's cross-complaint to have engaged in the following acts of legal malpractice: Mr. Chodos intentionally refused to enter into any written fee agreement or keep track of his hours; Mr. Chodos neglected to conduct "essential discovery" and failed to preserve evidence; they failed to retain a competent art appraiser or "conspired" with the appraiser to inflate the art's value; they failed to explain the overvaluations in advance of the decision to exchange "cash for art based on [the] appraised prices" at the time of the settlement; they misrepresented the material terms of the settlement agreement so as to require the retention of separate counsel; they failed to preserve evidence or conduct discovery concerning a diversion of funds from certain properties; they fraudulently agreed to represent the defendant during trial without any intent to actually try the case; they refused to prepare joint submission in pretrial documents; they failed to enforce an interim family court order; they failed to adequately advise the defendant on tax issues to the point that it was necessary she retain separate tax counsel at her own expense; they failed to execute a substitution of attorneys and turn over their litigation files; and they converted her property, including a handgun. The second cause of action is for conversion, which alleges that the defendant entrusted Mr. Chodos with a handgun. Mr. Chodos had refused to return the defendant's handgun to her.

### 3. Plaintiffs' equitable indemnity cross-complaint

On August 13, 2010, plaintiffs filed their equitable indemnity cross-complaint. It is plaintiffs' August 13, 2010 equitable indemnity cross-complaint that is subject to the special motions to strike. Plaintiffs' cross-complaint is entitled, "Verified Cross-Cross-complaint of Chodos for Equitable Indemnity." After repeating the complaint's discussion about the settlement of the lawsuits with Mr. Borman, plaintiffs expanded on their allegations about the defendant's use of separate counsel. According to plaintiffs' equitable indemnity cross-complaint: "[A]fter seeking and obtaining advice . . . on the subject of [plaintiffs'] fees from separate and independent counsel, Dana M. Cole, defendant agreed that a reasonable fee for [their] services would not be less than their hourly fees, but since she probably would be unable to pay them unless she obtained a recovery, would be equal to 15% of any recovery for her resulting from the civil [and marital dissolution] action[s] . . . ." Thus, according to plaintiffs' equitable indemnity cross-complaint, Mr. Cole advised the defendant concerning the modification of the attorney fee agreement. Mr. Cole was hired "in or about" January 2009.

Around May 2009, Mr. Johnson, who was acting on behalf of Mr. Dempsey and their law firm, was hired to advise the defendant. Gary S. Wolfe, a tax specialist who is not a party to this appeal, was retained around September 2009. After the fall 2009 settlement was successfully negotiated, the defendant discharged plaintiffs. In plaintiffs' stead, Mr. Johnson and his law firm were substituted into the marital dissolution and *Marvin* actions to represent the defendant. This was done solely for the purpose of avoiding any payment of fees to plaintiffs. The equitable indemnity cross-complaint alleges the following concerning the conduct of Mr. Johnson, Mr. Dempsey and their law firm and Mr. Cole: "[Mr. Chodos] maintains . . . that [defendant's] cross-complaint for legal malpractice is without merit, and without any foundation in fact or law. However, if and to the extent, if any, that defendant . . . is able to establish that the settlement she obtained and accepted was the product or result of legal malpractice, said malpractice [would] have been committed, not by [plaintiffs], but rather by one or more of the cross-defendants [Mr.] Cole, [Mr.] Johnson, [Mr.] Dempsey and Dempsey & Johnson, by each of whom it was independently reviewed and approved, and each of whom concurred in the propriety of said settlement and its benefit to defendant, and advised her to accept it, and on whose advice she relied in deciding to accept it."

The prayer for relief in plaintiffs' equitable indemnity cross-complaint states, "WHEREFORE, [Mr.] Chodos prays for a joint and several judgment against . . . cross-defendants, and each of them, for equitable indemnification for any amounts that may be found to be due to defendant . . . on account of

his alleged legal malpractice pertaining to the handling or settlement of her dissolution actions and civil Marvin action; for costs of suit herein; and for such other and further relief as this Court may [deem] just and proper."

### C. Declarations Filed in Support of the Special Motions to Strike Plaintiffs' Equitable Indemnity Cross-complaint

#### 1. Mr. Cole's declaration

In support of his special motion to strike plaintiffs' equitable indemnity cross-complaint, Mr. Cole filed a declaration. Mr. Cole's declaration states that in approximately January 2009, the defendant consulted with him. The purpose of their consultation was that the defendant was having difficulty communicating with Mr. Chodos. The defendant was "very concerned" that Mr. Chodos was unprepared to proceed to trial on the contract-related and marital dissolution actions. Several months later, in approximately March 2009, the defendant asked Mr. Cole to contact Mr. Chodos. Mr. Cole was asked to inquire of Mr. Chodos concerning the pending status of the contract and marital dissolution litigation.

Mr. Cole immediately contacted Mr. Chodos and they had a detailed discussion about the pending litigation. Mr. Cole's declaration states: "That contact led to a series of emails and telephone discussions regarding the status of the [pending lawsuits], and in particular, what a reasonable trial fee would be for [Mr.] Chodos to proceed to trial on the contractual claims. [Mr.] Chodos expressed particular concern because [defendant's] claim involved various properties and an art collection worth millions of dollars and [Mr.] Chodos had not previously entered into a written attorney fee agreement with [defendant]. I then continued my consultation with [defendant] and advised what I thought would be a reasonable trial fee. Despite such recommendations regarding any such fee for trial, no written agreement was ever entered into between [Mr. Chodos] and [defendant]."

In approximately May 2009, the defendant retained Mr. Johnson to assist her in assessing the legal matters that Mr. Chodos was handling. Mr. Cole's declaration described his contact with the defendant: "She continued to ask me to maintain contact with [Mr.] Chodos and advise her whether it was prudent for her to accept a settlement that [Mr. Chodos] had negotiated on her behalf to resolve all pending litigation against her former husband, including the divorce action and the Marvin claims. As a result, [Mr.] Johnson and I had several in person meetings with [Mr.] Chodos and [Mr.] Gibson to discuss and review the details of the proposed settlement. Usually, [defendant] was also present during these meetings which would include periods where [Mr.] Johnson and I would take [defendant] into a private room and

confidentially assess the propriety of the proposed settlement—particularly in light of the continuing concerns that [defendant] had about [Mr. Chodos's] ability to proceed to trial in the event she decided not to accept the proposed settlement."

Some of the discussions between Mr. Chodos and the defendant were described by Mr. Cole as contentious. Mr. Cole's role was to facilitate discussions because the defendant had lost confidence in Mr. Chodos. Mr. Cole described the settlement of the marital dissolution and contract action: "In approximately mid-July 2009, after several contentious and threatening emails from [Mr.] Chodos to [Mr.] Cole and [Mr.] Johnson, including a threat to 'dismiss' the contract [litigation, defendant] decided to accept a settlement negotiated on her behalf by [Mr.] Chodos to resolve the [contract and marital dissolution litigation]. Upon signing the comprehensive settlement agreement, . . . an attorney fee dispute arose between [defendant] and [Mr.] Chodos with respect to legal services performed in the [contract and marital dissolution litigation], particularly because [Mr.] Chodos still had not entered into any written fee agreement with [defendant]."

Mr. Cole continued: "[T]hroughout my dealings with [defendant] and [Mr.] Chodos, I only independently advised [defendant] regarding the actions that [Mr.] Chodos was taking with respect to the [contract and marital dissolution litigation] and I facilitated communication between [defendant] and [Mr.] Chodos. At no time did I ever communicate with any opposing counsel in the [contract and marital dissolution litigation] as [Mr.] Chodos specifically insisted that I refrain from doing so. Additionally, I never appeared in court for [defendant] along side of [Mr.] Chodos, nor did I ever assist [Mr.] Chodos in the drafting of any pleadings, correspondence and/or agreements related to the [contract and marital dissolution litigation]. My role was very limited— simply to provide independent consultation and advice to [defendant] about her concerns regarding her relationship with [Mr.] Chodos on pending litigation."

In addition, prior to filing plaintiffs' equitable indemnity cross-complaint, Mr. Chodos attempted to disqualify Mr. Dempsey and Mr. Johnson, who represented the defendant in this lawsuit. Mr. Chodos indicated that Mr. Dempsey and Mr. Johnson were about to be sued on an equitable indemnity theory. According to Mr. Cole, the trial court expressly warned Mr. Chodos in its tentative ruling that equitable indemnity claims were improper under such circumstances.

## 2. Mr. Johnson's declaration

Mr. Johnson declared that in May 2009, the defendant retained him to evaluate plaintiffs' work. Mr. Johnson declared: "I agreed to advise [defendant] about her options in the cases in the face of her lawyers' failure to adequately litigate her claims, prepare the cases for trial or otherwise protect her interests. [¶] . . . During the next six months, I met frequently with [defendant], reviewed the case dockets and documents she provided, and met several times with plaintiffs. [¶] . . . During this time, I did not participate in the divorce cases; in fact, [Mr. Chodos] barred me from contacting any other counsel in the cases regarding any matter, including ongoing settlement discussions. [¶] . . . Ultimately, I concluded that my firm could not take over the divorce cases because (i) [plaintiffs] had failed to prosecute discovery, retain experts and prepare for trial, and these failures could not be remedied given the proximity to trial, and (ii) I concluded [plaintiffs] could not possibly succeed at trial since they were so utterly unprepared and therefore unable to prove the case. [¶] . . . [Mr. Chodos] himself admitted he could not prove her case, pointing the finger at his client for creating a 'strained relationship,' and pushed her to accept her estranged husband's settlement offer (from his position of absolute strength) or he would unilaterally dismiss her cases. [¶] . . . Consequently, I advised [defendant] to take what she could through settlement and sue [plaintiffs] for malpractice, rather than have [Mr. Chodos] dismiss her claims and risk pursuing [Mr. Chodos], who is uninsured, for all her claims." On September 14, 2009, the defendant executed the final settlement agreement under what Mr. Johnson characterized as "duress."

Mr. Chodos stated he would not enforce the defendant's right to $1.63 million immediately due her under the settlement agreement unless the funds were deposited into his trust account. According to Mr. Johnson, "He specifically acknowledged that his demand that funds go into his trust account *was not* required by the agreement but stated that he did 'not trust [defendant].' [¶] . . . When I insisted [Mr. Chodos] needed to enforce the agreement on behalf of his client only as written, [Mr. Chodos] refused and ordered me and my client to 'get the f***' out of his office."

On October 26, 2009, the defendant discharged Mr. Chodos. Mr. Johnson sent a substitution of attorney form to Mr. Chodos. When the substitution of attorney form was not returned, Mr. Johnson gave ex parte notice of his intention to seek a court order to relieve plaintiffs as the defendant's counsel. On November 5, 2009, Mr. Gibson sent Mr. Johnson the defendant's client files. At first, Mr. Chodos refused to provide the defendant's client files to Mr. Johnson. Mr. Chodos only provided the defendant's files when Mr. Johnson gave ex parte notice on December 16, 2009, of an intention to seek an order requiring that they be turned over. After Mr. Johnson substituted into the case, the defendant executed the stipulated judgment on

November 14, 2009, and Mr. Borman did so on December 3, 2009. Judgment was entered in the marital dissolution case on December 18, 2009. Mr. Johnson declared that had he known he would be sued over his representation of the defendant, it would have chilled the ability of his law firm to protect her rights.

### 3. Mr. Dempsey's declaration

Mr. Dempsey declared that he was preparing the defendant's legal malpractice case for trial against plaintiffs. Mr. Dempsey stated: "I was not directly involved in the evaluation of the divorce cases performed by my partner, Mr. Johnson, but did sit in on a few client meetings and received cc's on a few e-mails from Mr. Johnson regarding work with [defendant]. [¶] . . . Faced with [Mr. Chodos's] equitable indemnity claim for malpractice, however, I believe that it will be impossible for my firm to defend against the claim without revealing substantial confidential attorney-client communications. Those communications occurred between about May . . . and December 2009 while Mr. Johnson was evaluating the work of [Mr. Chodos] and [Mr. Gibson], and advising [defendant] on key strategies and the recommended malpractice claim. [¶] . . . If our firm had thought during the time that [Mr.] Johnson was advising [defendant] about the divorce cases that Mr. Chodos might be able to drag us into protracted litigation about whether we had to pay any part of the damage caused by his malpractice, it would have chilled our ability to fully advise our client. We could not have given her the unfettered advice we did give her. If we have to defend Mr. Chodos's lawsuit asking we indemnify him for his malpractice or pay part of the damage, we will be forced to disclose attorney-client communications or forego a key part of our defense."

### D. The Judicial Notice Request of Mr. Johnson, Mr. Dempsey and Their Law Firm

Mr. Johnson, Mr. Dempsey and their law firm filed a judicial notice request in connection with the special motions to strike. Many of the documents, although relevant to the motions, are unrelated to the issues pertinent to this appeal. However, several of the documents warrant discussion.

On June 14, 2010, plaintiffs filed a motion to disqualify Mr. Dempsey and his law firm from the present case. This was prior to the filing of the defendant's July 9, 2010 legal malpractice cross-complaint. Attached to the disqualification motion was Mr. Chodos's declaration. In that declaration, he states: "On May 7, 2010, [Mr.] Dempsey wrote me a second letter saying that

if and when the demurrer was overruled, he planned to file an answer on behalf of defendant . . . , together with a cross-complaint against [Mr.] Gibson and me for legal malpractice. . . . [¶] . . . I immediately replied to Mr. Dempsey that a complaint for malpractice would constitute a malicious prosecution, and also assuring him that if such a cross-complaint were file[d], I would be require[d] to . . . cross-complain against him and his firm and Mr. Johnson, as well as [Mr.] Cole and [Mr.] Wolfe."

A copy of Mr. Chodos's May 10, 2010 letter threatening to file the equitable indemnity cross-complaint is attached to his declaration. In addition, Mr. Chodos's letter contains the following threat: "[I]t will constitute a malicious prosecution. We will resist the claim, and if, as we anticipate, it is terminated finally in our favor, we can assure you that we will sue [defendant], and any lawyer or law firm that prosecutes a malpractice claim against us on her behalf, for very substantial compensatory and punitive damages for malicious prosecution."

Also attached to the disqualification motion is a partial transcript of a June 10, 2010 deposition of the defendant. During the deposition, Mr. Dempsey interposed an objection on speculation and conclusion grounds relating to the value of some art. Mr. Dempsey instructed the defendant not to answer the question. In response, Mr. Chodos said: "We'll suspend the deposition, and we'll take it up with the Court. . . . I want to give you notice now on the record and we plan to go to court on Monday with a motion to disqualify your firm and an ex part[e] application to shorten time for hearing on the motion." When Mr. Dempsey asked what the motion would involve, Mr. Chodos responded: "The motion will be to disqualify the firm of Dempsey & Johnson and you and Mr. Johnson on the ground that Mr. Johnson will be a witness and apparently you will be a witness, and on the further ground that you plan to file a cross-complaint for malpractice, and we will have to file a . . . cross-complaint for malpractice, and you will therefore be parties and disqualified from representing." As noted, in denying plaintiffs' disqualification motion on June 21, 2010, the trial court warned Mr. Chodos about the problems of pursuing any legal malpractice indemnity claims against successor counsel.

### IV. MR. CHODOS'S OPPOSITION TO THE SPECIAL MOTIONS TO STRIKE THE EQUITABLE INDEMNITY CROSS-COMPLAINT

On November 15, 2010, Mr. Chodos filed his opposition to the special motions to strike. Mr. Chodos contended the claims in the equitable indemnity cross-complaint did not arise from conduct specified in section 425.16,

subdivision (e). He also argued that even if the claims arose from conduct enumerated in section 425.16, subdivision (e), he had demonstrated a probability of prevailing during a trial.

The opposition was supported by Mr. Chodos's declaration. Mr. Chodos cited to Mr. Wolfe's deposition testimony: "During Mr. Wolfe's deposition, he explained that he [had] been retained only in September 2009, and had participated in the underlying proceedings for only about five days. He was only asked to review, and only did review, the tax aspects of a proposed settlement between defendant . . . and her husband. He was not called upon to review, and did not review or approve, the non-tax-related substantive provisions of the proposed settlement. In light of that testimony, which I have no reason to doubt, I do not believe he would be an appropriate . . . cross-defendant with respect to any claim against me and [Mr.] Gibson for legal malpractice. However, Mr. Wolfe did say that he believed there was no malpractice, and that Mr. Gibson and I had achieved a 'home run' for defendant . . . ."

In addition, Mr. Cole admitted at his deposition that he had been asked by the defendant to "ghost write" a letter for her. The letter was to be sent to Mr. Chodos expressing her various concerns. Although the letter was drafted, it was never sent. In addition, Mr. Cole admitted that he acted as independent counsel for the defendant. Mr. Cole admitted attending meetings with the defendant and plaintiffs. Also present at later meetings were Mr. Johnson and Mr. Wolfe to discuss various aspects of the underlying settlements. Further, Mr. Cole admitted recommending to the defendant that she accept the final proposed settlement. In addition, Mr. Cole testified that he did not believe that plaintiffs had committed any legal malpractice.

Additionally, based upon attached deposition transcripts, Mr. Chodos declared that Mr. Johnson was first consulted by the defendant around May 2009. From that date forward, until the case settled, Mr. Johnson participated in a number of meetings concerning the settlement of the litigation between the defendant and Mr. Borman. Mr. Chodos declared: "The settlement agreement provided that it would be incorporated in a stipulated judgment to be submitted to the Court in the marital dissolution proceeding. After that document was prepared, and before it was filed, defendant . . . objected to a provision that the husband's first payment would be made to me and be placed in my trust account. She insisted that the payment be made directly to her, expressing the idea that if the payment came to me, I would take it for

myself and [Mr.] Gibson, and not deliver it to her. [Mr.] Johnson echoed this idea." Mr. Chodos admitted after further discussion that he became very angry and demanded that Mr. Johnson leave plaintiffs' offices.

## V. THE SPECIAL MOTIONS TO STRIKE PLAINTIFFS' EQUITABLE INDEMNITY CROSS-COMPLAINT WERE PROPERLY GRANTED

### A. Plaintiffs' Equitable Indemnity Claims Arise from Litigation Conduct Subject to a Special Motion to Strike

The trial court correctly granted the special motions to strike plaintiffs' equitable indemnity cross-complaint. At the outset, it is proper to identify the gravamen of plaintiffs' equitable indemnity cross-complaint. (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319 [86 Cal.Rptr.3d 288, 196 P.3d 1094]; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695].) The " 'principal thrust or gravamen' " test is to be broadly interpreted. (*Club Members for an Honest Election v. Sierra Club, supra*, 45 Cal.4th at p. 319; see *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1220 [102 Cal.Rptr.3d 245] (hereafter *PrediWave Corp.*) The principal thrust of plaintiffs' equitable indemnity cross-complaint is that the advice and negotiations engaged in by the defendant's attorneys contributed to her legal malpractice damages. As noted, the operative paragraph of plaintiffs' equitable indemnity cross-complaint states: "[Mr. Chodos] maintains . . . that [defendant's] cross-complaint for legal malpractice is without merit, and without any foundation in fact or law. However, if and to the extent, if any, that defendant . . . is able to establish that the settlement she obtained and accepted was the product or result of legal malpractice, said malpractice [would] have been committed, not by [plaintiffs], but rather by one or more of the cross-defendants [Mr.] Cole, [Mr.] Johnson, [Mr.] Dempsey and Dempsey & Johnson, by each of whom it was independently reviewed and approved, and each of whom concurred in the propriety of said settlement and its benefit to defendant, and advised her to accept it, and on whose advice she relied in deciding to accept it." The cause of plaintiffs' damages, as they allege it, are written and oral statements of Mr. Johnson, Mr. Dempsey, the firm of Dempsey & Johnson PC and Mr. Cole. Thus, the gravamen of plaintiffs' claims, the injury-causing conduct, are the written and oral statements. (*Scott v.*

*Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 416 [9 Cal.Rptr.3d 242]; *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 187 [6 Cal.Rptr.3d 494].)

Section 425.16 can apply when suit is based on written or oral statements made by an attorney in connection with an issue under consideration in a court, as occurred here. (§ 425.16, subd. (e)(2) ["any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"].) Section 425.16, subdivision (e)(2) applies to statements made by attorneys representing clients in the settlement process. (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 964–967 [106 Cal.Rptr.3d 290] [attorney negotiating a secret settlement]; *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 908 [90 Cal.Rptr.3d 218] [communication by an attorney in connection with settlement of a lawsuit "directly implicates the right to petition" and is subject to special motion to a strike]; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1420 [103 Cal.Rptr.2d 174] [all of the four causes of action arose from the defendant's acts of negotiating a stipulated settlement].) Section 425.16 may apply to written or oral statements made between private parties. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 91 [124 Cal.Rptr.2d 530, 52 P.3d 703]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

Mr. Chodos argues though that the special motion to strike remedy has no application to legal malpractice claims. Mr. Chodos relies on Court of Appeal decisions which hold that section 425.16 does not apply to legal malpractice claims brought by an attorney's former client. Each of these decisions involves a client suing his or her former attorney for forms of professional negligence. (*PrediWave Corp., supra,* 179 Cal.App.4th at pp. 1221–1228 [conflict of interest claims by former client]; *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 572–582 [104 Cal.Rptr.3d 628] [errors by former counsel]; *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1535, 1539–1540 [52 Cal.Rptr.3d 712] [" 'garden variety legal malpractice action' " pursued by former clients not subject to § 425.16]; *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1181, 1189 [20 Cal.Rptr.3d 621] [§ 425.16 does not apply to breach of loyalty claim]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 628, 630–631 [7 Cal.Rptr.3d 715] [client's suit based on terminating sanction issued after former lawyer's failure to obey court orders to produce documents].) Each of these cases involves professional negligence claims brought by a client against a former lawyer.

The rationale for these cases was explained by our Sixth Appellate District colleagues thus: " 'A malpractice claim focusing on an attorney's incompetent handling of a previous lawsuit does not have the chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute. In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so. Instead of chilling the petitioning activity, the threat of malpractice encourages the attorney to petition competently and zealously.' " (*PrediWave Corp., supra,* 179 Cal.App.4th at p. 1222, quoting *Kolar v. Donahue, McIntosh & Hammerton, supra,* 145 Cal.App.4th at p. 1540; accord, *Robles v. Chalilpoyil, supra,* 181 Cal.App.4th at pp. 577–578.) But these latter three legal malpractice/special motion to strike cases draw a crucial distinction. They all hold that the special motion to strike remedy may be available when suit is filed against a third party attorney as occurred here. *Robles, PrediWave Corp.* and *Kolar* draw this distinction, " 'This is vastly different from a third party suing an attorney for petitioning activity, which clearly could have a chilling effect.' " (*PrediWave Corp., supra,* 179 Cal.App.4th at p. 1222, quoting *Kolar v. Donahue, McIntosh & Hammerton, supra,* 145 Cal.App.4th at p. 1540; accord, *Robles v. Chalilpoyil, supra,* 181 Cal.App.4th at p. 578.)

The distinction between client malpractice cases and other scenarios was spelled out in *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 158 [143 Cal.Rptr.3d 17]: "[I]if the plaintiff is a nonclient who alleges causes of action against someone else's lawyer based on that lawyer's representation of other parties, the anti-SLAPP statute is applicable to bar such nonmeritorious claims. The discussion in *PrediWave* is illustrative: 'In determining the applicability of [section 425.16], we think a distinction must be drawn between (1) clients' causes of action against attorneys based upon the attorneys' acts on behalf of those clients, (2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients, and (3) nonclients' causes of action against attorneys. In the first class, the alleged speech and petitioning activity was carried out by attorneys on behalf of the plaintiffs in the lawsuits now being attacked as SLAPP's, although the attorneys may have allegedly acted incompetently or in violation of the Professional Rules of Conduct.' (*PrediWave, supra,* 179 Cal.App.4th at p. 1227.) [¶] In other words, only the 'first class' of claims—those brought by former clients against their former attorneys based on the attorneys' acts on behalf of those clients—may not be within the ambit of [section 425.16]. The other kinds of actions—'(2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients, and (3) nonclients' causes of action against attorneys'—are. (*PrediWave, supra,* at p. 1227.)" The third scenario, of course, is the situation

here. Hence, the legal malpractice cases relied upon by Mr. Chodos are inapplicable.

### B. Mr. Chodos Has Not Shown His Claims Have Minimal Merit

Mr. Chodos has not shown his claims have the requisite minimal merit. (§ 425.16, subd. (b)(2); *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 [124 Cal.Rptr.3d 256, 250 P.3d 1115].) First, all of Mr. Chodos's claims are barred by the litigation privilege. (Civ. Code, § 47, subd. (b); *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 [63 Cal.Rptr.3d 398, 163 P.3d 89].) Second, Mr. Chodos may not sue Mr. Dempsey, Mr. Johnson and their firm, who presently represent the defendant, for equitable indemnity in response to her legal malpractice cross-complaint. (*Shaffery v. Wilson, Elser, Moskowitz, Edelman & Dicker* (2000) 82 Cal.App.4th 768, 769–770 [98 Cal.Rptr.2d 419]; *Gibson, Dunn & Crutcher v. Superior Court* (1979) 94 Cal.App.3d 347, 355 [156 Cal.Rptr. 326].)

### VI. THE TWO ATTORNEY FEE AWARDS

First, section 425.16, subdivision (c)(1) attorney fee awards are reviewed for an abuse of discretion. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 [104 Cal.Rptr.2d 377, 17 P.3d 735]; *Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1388 [34 Cal.Rptr.3d 368].) Without a reporter's transcript, it is impossible to assess whether an abuse of discretion occurred. (*Vo v. Las Virgenes Municipal Water Dist., supra,* 79 Cal.App.4th at p. 447; see *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187 [129 Cal.Rptr.3d 421].)

Second, as to Mr. Johnson, Mr. Dempsey and their law firm, Mr. Chodos's premature appeal from the attorney fee award must be dismissed as it relates to the *amount of fees.* Mr. Chodos filed his notice of appeal on October 3, 2011. This was before the trial court calculated the amount of fees payable to Mr. Johnson, Mr. Dempsey and their law firm. The attorney fee award in favor of Mr. Johnson, Mr. Dempsey and their law firm was not entered until October 28, 2011. Based upon the written documents in the appellants' appendix, the hearing was held on October 28, 2011. Thus, Mr. Chodos's premature appeal, made prior to the calculation of the amount of attorney fees, must be dismissed *insofar as it relates to the fee amount.* (*Silver v. Pacific*

*American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 691 [118 Cal.Rptr.3d 581]; *First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 960–961 [134 Cal.Rptr.2d 206].)

A petition for a rehearing was denied November 14, 2012, and on November 7, 2012, the opinion was modified to read as printed above. Respondents' petitions for review by the Supreme Court were denied February 13, 2013, S207106.