Filed 10/30/14  Seaport Village v. Glaser Weil etc. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SEAPORT VILLAGE, LTD., | B250474 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC499667) |
| GLASER WEIL FINK JACOBS HOWARD AVCHEN & SHAPIRO et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Conrad R. Aragon, Judge.  Affirmed.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer, and Jon D. Robinson for Defendants and Appellants.

Law Offices of John T. Blanchard and John T. Blanchard for Plaintiff and Respondent.

Glaser Weil Fink Jacobs Howard Avchen & Shapiro, LLP, Barry E. Fink, and Amman A. Khan (appellants) appeal from an order of the trial court denying their special motion to strike the complaint filed by Seaport Village, Ltd. (respondent) pursuant to Code of Civil Procedure section 425.16 (section 425.16 or anti-SLAPP statute).

We find no error in the trial court's ruling, therefore we affirm the order.

## CONTENTIONS

Appellants contend that the trial court erred in classifying this lawsuit as a "garden variety" legal malpractice action and concluding that the activity complained of in respondent's lawsuit was not protected activity under section 425.16.

Appellants further contend that respondent has not shown a probability of prevailing in the action.

## FACTUAL BACKGROUND

During her lifetime, Janice Taubman (Janice) created the Taubman Trust (trust) to benefit her two children, Anne and Ricky.[1]  Janice died on September 5, 1999.  U.S. Bank (USB) became a successor co-trustee, then the sole trustee.

On the date of Janice's death, the trust owned a leasehold interest in a popular waterfront shopping center in downtown San Diego known as the Seaport Village.  The trust held the lease through its ownership interest in two business entities:  respondent, and respondent's general partner San Diego Seaport Village, Inc. (SVI).

Under the terms of the trust, Anne was appointed special trustee of the Seaport Village assets.  Anne was also president of SVI and chairman of its board of directors until she was removed for breaches of duty and misappropriation in 2003.

Under Anne's direction, respondent entered into multiple transactions known as the "GMS transactions," through which the lease was transferred to a new entity known as Seaport Village Operating Co. (Operating Co.).  Operating Co. was to be held in equal

---

[1]     For clarity, we refer to the Taubman family members by their first names.  No disrespect is intended.

2

shares by GMS Realty and a broker named Michael Cohen (Cohen). However, Cohen wrongfully allotted a 25 percent interest in Operating Co. to himself personally.

USB brought an action against Anne for removal as special trustee, breach of fiduciary duty and damages for conversion of trust assets. Appellants represented USB in that action, which was successful. USB was appointed the successor special trustee. Between February 2003 and May 2011, USB acted as trustee of the Seaport Village assets held by the trust. The bank's regional manager, Robert Tidemann, was president of respondent's general partner and thus held control of respondent.

Following the surcharge proceedings, the trust continued to be burdened by lawsuits related to the GMS transactions. The trust was required to defend against lawsuits by individuals who were involved with Anne in the GMS transactions, and filed suit against those who aided and abetted Anne in the GMS transactions. In particular, appellants filed on behalf of USB two cross-complaints in two pre-existing interpleader actions (cross-complaints), Los Angeles Superior Court case Nos. BC344151 (the Lending Co. Interpleader) and case No. BC347052 (the Operating Co. Interpleader). Both cross-complaints sought rescission of the purported consulting agreement on which Cohen based his claim of entitlement to the 25 percent ownership interest in Operating Co.; an accounting; and imposition of a constructive trust against Cohen.

The parties disagree as to whether the two cross-complaints were ever resolved. Appellants claim that the parties entered into settlements that encompassed the legal action between the trustees and Cohen in the Lending Co. interpleader and the Operating Co. interpleader.

Respondent, on the other hand, contends that appellants failed to take necessary actions to bring the cross-complaints to trial within five years of their commencement, as required by Code of Civil Procedure section 583.310. Therefore, according to respondents, no relief was ever obtained from Cohen.

Beginning in 2011, the trustee requested that the court distribute assets of the trust and prepare the way for termination of the trust. The court granted the trustee's request to distribute the assets of the trust. The court distributed Anne's share of the Seaport

3

Village holdings to Anne. Anne was returned to her role as president of SVI, the general partner of respondent. Thus, at the time this litigation against appellants was filed in January 2013, Anne was effectively in control of respondent.

## PROCEDURAL HISTORY

Respondent filed its complaint for legal malpractice against appellants on January 22, 2013. On May 28, 2013, appellants filed their anti-SLAPP motion. Appellants argued that respondent's cause of action for legal malpractice falls within the ambit of the anti-SLAPP statute as a retaliatory action filed by Anne, who is now in control of respondent. Specifically, appellants argued that "this action is at the behest of Anne who now controls [respondent]. Anne was never a client of [appellants], and was, in fact, always adverse to the position of [USB], [appellants'] client." Appellants urged the trial court to accept their view that the case should be seen as "Anne's vindictive attempted retaliation for years of litigation, including court approved settlements and resulting judgments."

Appellants also argued that respondent could not prevail on the malpractice action.

On June 25, 2013, the trial court filed its order denying appellants' anti-SLAPP motion. In sum, the trial court concluded that the lawsuit falls outside of the protection of the anti-SLAPP statute. The court noted its position that this is a "'garden variety'" legal malpractice action. As to appellants' arguments that Anne was behind the filing of the action, the court noted that "there is . . . no claim asserted by [Anne] in this action, at least not in her individual capacity. If she is 'present' in this complaint it is only by virtue of her status as trustee. The only alleged injury is to [respondent], and has to do with the loss of the value of the 25 [percent] share claimed by Mr. Cohen." The trial court cited *Chodos v. Cole* (2012) 210 Cal.App.4th 692 for the proposition that "the anti-SLAPP statute does not apply to claims of attorney malpractice."

Because the trial court concluded that the matter fell outside of the protection of the anti-SLAPP statute, it did not reach the question of respondent's probability of prevailing on its claims.

On August 2, 2013, appellants filed their notice of appeal.

4

**DISCUSSION**

**I. Applicable law and standard of review**

A special motion to strike under section 425.16, also known as the anti-SLAPP statute, allows a defendant to seek early dismissal of a lawsuit involving a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." [2] (§ 425.16, subd. (b)(1).)

Actions subject to dismissal under section 425.16 include those based on any of the following acts: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"A SLAPP is subject to a special motion to strike 'unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).) Thus, evaluation of an anti-SLAPP motion requires a two-step process in the trial court. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citations.]" (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1035 (*Nygard*).) "Only a cause of action that satisfies *both* prongs of

---

[2]    "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

the anti-SLAPP statute -- i.e., that arises from protected speech or petitioning *and* lacks even minimal merit -- is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

"'Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citations.]" (*Nygard, supra*, 159 Cal.App.4th at p. 1036.)

## II. The anti-SLAPP motion was properly denied

The threshold question in evaluating appellants' anti-SLAPP motion is whether respondent's complaint arises from protected activity. The trial court found that it did not. In sum, the trial court found that this matter is a garden variety legal malpractice action, and the anti-SLAPP statute does not apply to claims of attorney malpractice.

Appellants argue that the trial court was wrong. Appellants claim that this lawsuit has been filed to punish appellants for their previous litigation against respondent. Appellants contend that this lawsuit thus arises from appellants' prior "written or oral statement[s] or writing[s] made before a . . . judicial proceeding" and their "written or oral statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(1), (2).) For the reasons set forth below, we decline to accept appellants' position.

### A. *Appellants have failed to make a threshold showing that the complaint arises from protected activity*

The complaint on its face is a legal malpractice claim brought by respondent, appellants' former client. Respondent, a corporate entity, alleges that appellants failed to consummate essential terms of a settlement agreement regarding the cross-complaints, and allowed its meritorious claims against Cohen to expire by not bringing the claims to

6

trial within five years. Respondent alleges that as a result of appellants' negligence, it has lost the right to recover from Cohen the 25 percent interest that Cohen wrongfully allotted to himself.

"In determining whether the anti-SLAPP statute applies, the court must focus on the act which defines the '*principal thrust or gravamen*' of the cause of action [citation]" that is the basis for the cause of action. (*Chodos v. Cole, supra*, 210 Cal.App.4th at p. 705.) Here, respondent alleges that appellants breached their duty to respondent by the acts of malpractice described above. Thus, the gravamen of the complaint is professional negligence. It does not concern a right of petition or free speech. Instead, "'the lawsuit concerns a breach of duty that does not depend on the exercise of a constitutional right.' [Citations.]" (*Id.* at p. 702.) "Even though the 'petitioning activity is part of the evidentiary landscape within which [claimant's] claims arose, the gravamen of [claimant's] claims is that [the former attorney] engaged in nonpetitioning activity inconsistent with his fiduciary obligations owed to [claimant] . . . .' [Citation.]" (*Ibid.*) As such, the claim falls outside of the protection of the anti-SLAPP statute. (*Ibid.* ["'California courts have held that when a claim [by a client against a lawyer] is based on a breach of the fiduciary duty of loyalty or negligence, it does not concern a right of petition or free speech'"].)

### B. *Appellants' arguments do not change the result*

Appellants characterize this dispute as a SLAPP masquerading as a legal malpractice claim. Appellants cite *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21, for the proposition that "'"SLAPP suits masquerade as ordinary lawsuits."'" Rather than take the complaint on its face as a legal malpractice action, appellants argue, we must look further. "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability -- and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 92, original italics.) Appellants urge that section 425.16 must be "'construed broadly'" to protect freedom of

7

speech and petition. (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 883.)

Appellants point out that a company such as respondent is controlled and governed by people. (*De Albergaria v. American Trust Co.* (1932) 126 Cal.App. 59, 61.) During the time that appellants represented respondent, they reported to Tidemann, who acted as president of respondent. At all relevant times, Anne was respondent's adversary. When Tidemann controlled respondent, there were no grievances expressed regarding appellants or their representation of respondent.

Anne -- a former adversary of respondent in litigation -- has since taken control of respondent. Thus, appellants argue, this is "anything but a garden variety legal malpractice case." Instead, it is "Anne's effort to extract revenge against [appellants] for their years of successful litigation against her." Under the circumstances, appellants argue, an anti-SLAPP motion is appropriate. (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1262, fn. 6 ["An attorney has standing to bring a special motion to strike a cause of action arising from petitioning activity undertaken on behalf of the attorney's client"].)

Appellants argue that an exception should be recognized to the general rule that legal malpractice suits are not subject to the anti-SLAPP statute in the unusual situation where, as here, attorneys are sued by their client's adversary who has taken over control of the client.[3]

We decline to adopt appellants' interpretation of Anne's motivations. As described below, Anne's alleged personal incentive to get back at appellants is irrelevant to the anti-SLAPP analysis in this matter; furthermore, no such malice has been proven.

---

[3]    Appellants also suggest that this suit is akin to an assignment of a legal malpractice claim, and that such claims are not assignable as a matter of law. (*Musser v. Provencher* (2002) 28 Cal.4th 274, 285.) The evidence supports the trial court's conclusion that there was no assignment here. The legal malpractice claim has always belonged to respondent -- it was never transferred. The law regarding assignment of legal malpractice claims is irrelevant.

### 1. Anne is not a party to the case

Respondent, a corporate entity, is the plaintiff in this litigation against appellants. "Normally, a corporation is a legal person or entity which has a separate existence from that of its shareholders or officers." (*Say & Say, Inc. v. Ebershoff* (1993) 20 Cal.App.4th 1759, 1767.) Appellants ask that, instead of treating respondent as a corporate entity, we analyze the personal motivation of the individual in control of that entity. However, appellants cite no authority suggesting that it is appropriate to disregard the corporate form in the context of an anti-SLAPP motion.[4]

As the trial court noted, there is no cause of action asserted by Anne, and she is not a party to this litigation. Appellants provide no authority suggesting that the court may consider and determine the subjective motivations of a non-party to the case in deciding an anti-SLAPP motion. We decline to create new law suggesting that such a complex factual analysis is appropriate at this stage of the litigation.

### 2. No improper purpose has been proven

Even if Anne were a party to the case, we decline to indiscriminately accept appellants' interpretation of Anne's personal motivation in filing this legal malpractice claim. Appellants admit that there may be situations where a new owner's scrutiny, upon acquisition of a corporation, may result in a determination that a lawyer's prior performance for the corporation was substandard. However, appellants ask us to blindly accept that this is not the case here.

---

[4] We note that in making this argument, appellants ask that we engage in an analysis similar to that which is undertaken when there is a question of alter ego liability. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 ["The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly"].) When individuals abuse the corporate structure, it may be disregarded, and the court may hold individuals liable for actions taken by the corporation. (*Ibid.*) The question is "whether in the particular case presented and for the purposes of such case justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form." (*Kohn v. Kohn* (1950) 95 Cal.App.2d 708, 718.) Appellants have not directly raised the concept of alter ego, nor did the trial court make any findings that application of the doctrine was appropriate here.

The difficult factual question of a plaintiff's undisclosed motivation for filing a case is not properly decided in the context of an anti-SLAPP motion. (*JSJ Ltd. Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1521 ["The subjective intent of a party in filing a complaint is irrelevant in determining whether it falls within the ambit of section 425.16"].)  Instead, the analysis is restricted to a determination of whether the stated allegations reveal that the complaint arises from protected activity.  Here, they do not.

Appellants are not without recourse if their theory as to respondent's motivation is accurate.  Generally, a defendant's remedy for being subjected to a lawsuit initiated for an improper purpose is to bring a claim for malicious prosecution. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871.)  To prevail on such a claim, the plaintiff must demonstrate:  "'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citations.]" (*Ibid.*)  "The malice element of the malicious prosecution tort goes to the defendant's subjective intent in initiating the prior action.  [Citation.]" (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407.)  Any inquiry regarding the subjective intent of the plaintiff (or the plaintiff's alter ego) in filing the claim is properly fleshed out in a subsequent proceeding for malicious prosecution.

Because we have concluded that the complaint does not arise from protected activity, we need not address the second prong of the analysis regarding respondent's probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

10

## DISPOSITION

The order is affirmed.  Each side to bear their own costs of appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT