Filed 9/3/15  Dolinger v. Murphy CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NANCY DOLINGER, | B255830 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC520982) |
| v. | |
| MICHAEL C. MURPHY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. William F. Fahey, Judge.  Affirmed.

Nancy Dolinger, in pro. per, for Plaintiff and Appellant.

Michael C. Murphy, in pro. per, for Defendant and Respondent.

Adam Van Susteren, Van Susteren Law Group, for amicus curiae AltaGolden on behalf of Plaintiff and Appellant.

\* \* \* \* \* \*

The beneficiary of a trust sued the lawyer who drafted the trust and who later represented the trustee in litigation to recover trust assets; she alleged that the litigation was unnecessary and that the lawyer's fees substantially depleted the trust's assets. The trial court granted the lawyer's motion to strike the lawsuit as a strategic lawsuit against public participation (SLAPP). (Code of Civ. Proc., § 425.16.)[1] We conclude that the primary source of the beneficiary's alleged injury—namely, the lawyer's prosecution of the litigation—is "protected activity" within the meaning of the anti-SLAPP statute. We further conclude that the beneficiary's malpractice and breach of fiduciary duty claims are precluded as a matter of law because a lawyer owes no duty to a beneficiary to refrain from engaging in litigation that his client, the trustee, authorizes. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Beverly Seeman (Beverly) died on April 28, 2008, at the age of 92. She had two children, Michael Seeman (Michael) and Nancy Dolinger (plaintiff).[2]

Michael died on August 9, 2003, leaving a will that bequeathed 25 percent of his estate to Beverly, 25 percent to Ben Hayes (Ben), and 50 percent to his former wife, Rosa Seeman (Rosa). At the time of his death, Michael owned Joseem, Inc. (Joseem), a company that owned property that had been leased to 7-Eleven to run a minimart. Michael left plaintiff one dollar.

Between 2003 and 2007, plaintiff sued Michael's estate in probate court. That litigation concluded in 2007. Michael C. Murphy (defendant) was not involved in that litigation.

By 2007, the property held by Joseem was worth approximately $650,000. Rosa was the executor of Michael's estate, and she had yet to distribute any Joseem asset to

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]     Because many individuals involved in this case share the same last name, we use first names for clarity. No disrespect is intended.

2

either Beverly or Ben. As a later court found, Rosa displayed a penchant for "game-playing and foot dragging." So, in November 2007, Beverly and Ben filed an action in Los Angeles Superior Court to compel distribution of the assets in Michael's estate. Beverly and Ben personally signed the verified pleadings. In January 2008, Beverly and Ben filed a companion lawsuit, as persons entitled to 50 percent of Joseem's stock, to compel the involuntary dissolution of Joseem. Again, Beverly and Ben personally signed the verified pleadings. Beverly and Ben retained defendant to represent them in these matters.

In early 2008, Beverly created a trust and a pour-over will that poured certain of her assets into the trust. These testamentary documents enabled and specifically empowered the trustee to continue the litigation against Rosa, should Beverly die before that litigation concluded. Both the trust and will were notarized. The trust named Beverly as the trustee, Ben as her successor trustee, and Fe Balderama (Balderama), one of Beverly's former caregivers, as a second successor trustee should Ben also die. The trust was expressly funded by Beverly's 25 percent interest in Jossem, by a specifically named certificate of deposit, and by Beverly's personal belongings. The trust named plaintiff as its primary and sole beneficiary, and Ben and Balderama as alternate cobeneficiaries in the event of plaintiff's death.

Both lawsuits described above settled. With respect to the first lawsuit, Rosa made a cash distribution of approximately $25,000 to Beverly in March 2008,[3] and issued Beverly 305 shares of Joseem stock (constituting 25 percent of Joseem's shares) in June 2008. With respect to the second lawsuit, Rosa agreed to dissolve Joseem and to sell the property it owned; Rosa ultimately obtained net proceeds of $454,254.58 from that sale.

However, Rosa's distribution of those proceeds was not forthcoming. In November 2009, Ben—on behalf of himself and on behalf of Beverly's trust as successor trustee following her death—petitioned the Los Angeles Superior Court to supervise the

---

[3] The exact amount is unclear from the record. The March 2008 distribution is referred to as both $24,545, and $25,000.

3

voluntary winding up of Joseem. Ben personally verified the pleadings. Ben died eight months later, in July 2010. Tim Hayes (Tim), Ben's son and a friend of defendant's, became the trustee of Ben's estate; Balderama became the trustee of Beverly's estate.

After Tim and Balderama rejected Rosa's offer to settle the matter for $74,000 (per 25 percent interest), the lawsuit proceeded to a bench trial. In addition to allocating several expenses between and among Joseem's shareholders, the trial court ruled that Beverly's trust was entitled to $113,405.65 and Ben's estate was entitled to $113,463.64—each being approximately 25 percent of the $454,254.58 proceeds from the sale of the property. After accounting for federal and state taxes of $45,316 and attorney's fees and costs of $32,630.71, as well as the other allocations referred to in the court's order, defendant issued plaintiff two checks totaling $26,032.38 as her inheritance under Beverly's trust.

Defendant asserts that plaintiff in 2009 also received $60,000 for the value of the specified certificate of deposit, and that Beverly's trust was credited $10,000 for a 2010 distribution from Joseem. Plaintiff denies both.

Plaintiff was never defendant's client.

## II.    Procedural Background

Plaintiff sued Balderama for breach of fiduciary duty, and separately sued defendant. This appeal concerns the latter lawsuit. In the operative first amended complaint (FAC) in this case, plaintiff sought damages on theories of malpractice and breach of fiduciary duty.[4]

Plaintiff alleges that defendant breached his duty to her, as beneficiary of Beverly's trust, by allowing Beverly to create a trust at a time when Beverly suffered from dementia; by not ensuring that Beverly funded the trust with two other bank accounts and other certificates of deposit, including a bank account that had a balance of nearly $30,000 in 2003; and by pursuing the trust's efforts to recover its interest in

---

[4]    The FAC appears to be identical to the original complaint except for a different cover page and verification page.

4

Jossem through "unnecessary" litigation that Beverly did not want and that generated attorney's fees and costs that "depleted" the trust's assets to plaintiff's detriment and defendant's benefit. As relief, plaintiff seeks disgorgement of the attorney's fees and costs, the award of the assets not used to fund the trust, and emotional distress damages arising from defendant's alleged conduct in belittling plaintiff during and after a court appearance.

Defendant filed a motion to strike plaintiff's lawsuit under the anti-SLAPP statute.[5] Plaintiff opposed the motion. Defendant objected to much of plaintiff's evidence, and filed a reply.

The trial court granted defendant's motion, and dismissed plaintiff's case with prejudice. The court ruled that the gravamen of the FAC "concerns the defendant's action as litigation counsel for [the trust's trustee]," which constitutes protected petitioning activity under the anti-SLAPP statute. Plaintiff was thus required to show a probability of prevailing on her claims. The court found that she did not carry that burden because the evidence she submitted in opposition to defendant's motion was inadmissible and because the litigation privilege (Civ. Code, § 47, subd. (b)) applied, and barred her claims.

Plaintiff timely appeals.

## DISCUSSION

Plaintiff argues that the trial court erred in granting defendant's special motion to strike the FAC under the anti-SLAPP statute (§ 425.16).

Section 425.16 was created "to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1217 (*PrediWave*).) To effectuate this purpose, the anti-SLAPP statute empowers a trial court to strike a claim if it "aris[es] from"—that is, if it is "based [on]"—one of four types of "protected activity" enumerated in section 425.16, subdivision (e) unless the plaintiff "establishes that there is

---

[5] Defendant also filed a demurrer, which was dismissed as moot.

5

a probability that the plaintiff will prevail on the claim." (§ 425.16, subds. (b)(1), (b)(2) & (e); *PrediWave*, at p. 1219.) We independently review the trial court's assessment of whether a claim is based on "protected activity" as well as its evaluation of a plaintiff's probability of prevailing. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 (*Rusheen*); *Bergstein v. Strook & Strook & Lavan LLP* (2015) 236 Cal.App.4th 793, 803 (*Bergstein*).)

## I.     Whether Plaintiff's Claims Are Based On "Protected Activity"

Section 425.16's screening mechanism applies when a "[a] cause of action against a person arise[s] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" (§ 425.16, subd. (b)(1)), and defines such acts to include "(1) *any written or oral statement or writing made before a legislative, executive or judicial proceeding, or any other official proceeding authorized by law*, (2) *any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law*, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e), italics added.)

A claim "arises from" so-called "protected activity" if it is "based on" that activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) In assessing what a claim is "based on," courts are to "focus [] on the *wrongful, injurious* acts or omissions identified in the complaint, and whether those acts or omissions come within the statute's description of protected conduct." (*Old Republic Constr. Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 862, 868.) What matters is the "defendant's *activity*," not how the plaintiff has decided to frame her cause of action. (*Bergstein*, *supra*, 236 Cal.App.4th at p. 811.) The party moving to strike a claim does not need to prove that the plaintiff subjectively intended that her claim squelch the

defendant's exercise of his protected rights (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67-68 (*Equilon Enteprises*)); does not need to prove that defendant undertook the protected activity on his own behalf (*Briggs v. Eden Council For Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116 (*Briggs*)); and does not need to prove, if the party is relying on any type of protected activity italicized above, that the protected activity also concerns an issue of public significance (*id.*, at p. 1123). When a claim rests on both protected and unprotected activity, "the court looks to the gravamen of the claim to determine if the claim" involves protected activity. (*Bergstein*, at p. 804.) Just like ascertaining what a claim is "based on," the gravamen of a claim is determined by looking at the defendant's alleged conduct (and not how the plaintiff formulates her claim based on that conduct) and by identifying "'[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.'" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272). As long as the protected activity is not "merely incidental to the claim," the whole claim will be subject to the anti-SLAPP statute. (*Bergstein*, at p. 804.)

A lawsuit is a "judicial proceeding" within the meaning of section 425.16, so the acts of filing and litigating a lawsuit, as well as any prelitigation statements "in connection with" that lawsuit, can constitute protected activity. (§ 425.16, subds. (e)(1) & (e)(2); *PrediWave*, *supra*, 179 Cal.App.4th at p. 1221; *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388 (*Coretronic*); *Briggs*, *supra*, 19 Cal.4th at p. 1115 ["'[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege . . ., such statements are equally entitled to the benefits of section 425.16.' [Citation.]"].) However, it is not enough that a lawsuit was filed "after [the] protected activity took place" or was "triggered" by the protected activity. (*PrediWave*, at p. 1219; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 730 (*Freeman*).) Instead, the lawsuit must *be* the protected activity; in other words, the wrongful, injurious conduct the plaintiff alleges must be the lawsuit itself.

In this case, the gravamen of plaintiff's malpractice and breach of fiduciary duty claims is that defendant engaged in litigation for Beverly's trust that was unnecessary and designed to enrich himself at the expense of plaintiff by depleting her inheritance through attorney's fees and litigation costs. To be sure, plaintiff also alleges that she suffered injury when defendant urged Beverly to create the trust in the first place and when defendant berated her (and caused her emotional distress). But the primary thrust of plaintiff's claims remains her contentions regarding defendant's pursuit of the litigation on behalf of the trust; those contentions are not "incidental." (*Bergstein*, *supra*, 236 Cal.App.4th at p. 804.) What is more, the primary damages plaintiff seeks arise from the allegedly wrongful pursuit of litigation. Indeed, the trust was originally created to *allow* the continuation of litigation Beverly personally initiated in the event she died before it was resolved. In light of these considerations, plaintiff's inclusion of unprotected conduct does not take her complaint outside of the anti-SLAPP statute (*PrediWave*, *supra*, 179 Cal.App.4th at p. 1220, quoting *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319 [Plaintiff "cannot 'deprive [the] defendant of anti-SLAPP protection by bringing a complaint based upon both protected and unprotected conduct'"].)

Plaintiff offers two arguments in response. First, she invokes the long line of cases holding that a client's claims against his own attorney for malpractice or breach of fiduciary duty is not subject to the anti-SLAPP statute because such claims arise out of the attorney's alleged "failure to protect their client's rights in the underlying action" and not the "attorney's First Amendment right to petition." (*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 627; accord, *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702 (*Chodos*); *Coretronic*, *supra*, 192 Cal.App.4th at p. 1391; *PrediWave*, *supra*, 179 Cal.App.4th at p. 1227; *Freeman*, *supra*, 154 Cal.App.4th at pp. 732-733; *Benasra v. Mitchell Silberberg & Knupp LLC* (2004) 123 Cal.App.4th 1179, 1189.) But the principle articulated in these cases is limited by its rationale. By its own terms, it does not extend to "clients' causes of action against attorneys based on statements or conduct solely on behalf of *different* clients" or "*nonclients'* causes of action against attorneys."

8

(*PrediWave*, *supra*, 179 Cal.App.4th at p. 1227, italics added; *Chodos*, *supra*, 210 Cal.App.4th at p. 704.)  Thus, when a plaintiff sues *someone else's* lawyer for litigation-related conduct, the anti-SLAPP statute applies if the gravamen of the plaintiff's claim is that litigation.  (*Bergstein*, *supra*, 236 Cal.App.4th at p. 797 [lawsuit against adversary's lawyers for their alleged litigation-related misconduct; "protected activity"]; *Finton Constr., Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210.)  Because plaintiff frankly concedes that defendant was never her lawyer, her claims are not ones for malpractice and breach of fiduciary duty between a client and her lawyer, and the precedent she cites is inapposite.

Second, plaintiff suggests that defendant engaged in illegal conduct by drafting a will that named Balderama, Beverly's former caregiver, as a successor trustee.  Where a defendant's conduct is "illegal as a matter of law," it cannot constitute protected activity under the anti-SLAPP statute.  (*Finton*, *supra*, 238 Cal.App.4th at p. 210; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).)  But to fit within this exception, a defendant's conduct must be "criminal, and not merely violative of a statute" (*Mendoza v. ADP Screening & Selection Servs., Inc.* (2010) 182 Cal.App.4th 1644, 1654), and the criminal violation must either be conceded by the defendant or "conclusively shown by the evidence" (*Flatley*, at p. 316).  Here, Probate Code section 21380 erects a rebuttable presumption that a testator naming a current or recent caregiver *as a beneficiary* has done so through undue influence (Prob. Code, § 21380, subds. (a)(3) & (b)), but Beverly named Balderama *as a successor trustee*; Balderama was only an *alternate* beneficiary, and one who ended up receiving nothing from the trust.  More to the point, Probate Code section 21380—as well as the other Probate Code sections plaintiff argues on appeal that defendant violated (sections 15201 and 1060 to 1064)—are not criminal and thus fall outside this narrow exception for criminal conduct.

We accordingly conclude that the gravamen of plaintiff's FAC is protected activity, and now examine whether she has demonstrated a probability of prevailing on the claims in the FAC.

**II.     Whether Plaintiff Has Established a Probability of Prevailing on Her Claims**

Once a claim is shown to fall within the ambit of the anti-SLAPP statute, the burden shifts to the plaintiff to establish a "probability" of prevailing on that claim at trial. (§ 425.16, subd. (b)(1); *Chodos*, *supra*, 210 Cal.App.4th at p. 701.) In making this assessment, "the [trial] court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) The pleadings "frame the issue to be decided" (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 655, abrogated on other grounds in *Equilon Enterprises*, *supra*, 29 Cal.4th at p. 53), and the court then evaluates whether the evidence submitted by the parties and admissible at trial amounts to "'sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited'" or instead whether defendant is entitled to prevail "'as a matter of law.'" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1235, quoting *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906 (*Kashian*) ["The court considers only the evidence that would be admissible at trial"].) Because the plaintiff's evidence must be credited, a court is not to make credibility determinations or otherwise weigh the evidence submitted. (*Kashian*, at p. 906.)

To prevail on either of her claims for malpractice or for breach of fiduciary duty, plaintiff must show that defendant owed her a duty. (*Moore v. Anderson Zeigler Disharoon Gallagher & Gray* (2003) 109 Cal.App.4th 1287, 1294 (*Moore*) ["A key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant"]; *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 ["The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages"].) When it comes to duties owed by attorneys, "[a]n attorney-client relationship normally is essential to the existence of an attorney's duty toward others." (*Berg & Berg Enterprises, LLC v. Sherwood Partners, LLC* (2004) 131 Cal.App.4th 802, 826 (*Berg & Berg Enterprises*); *Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1268 (*Goldberg*) [fact that beneficiaries

10

may benefit from attorney's representation of estate "does not give rise to a duty by the attorney to such third parties"].) An attorney's duties of loyalty, confidentiality and competence and other fiduciary duties all flow from that relationship. (E.g., *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1174 ["An attorney's fiduciary obligations to his or her client include the duties of loyalty and confidentiality"].)

In this case, plaintiff has admitted that she was never defendant's client. Further, it is well settled that "the attorney for the trustee of a trust . . . represents only the trustee," not the trust's beneficiaries. (*Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 213 (*Wells Fargo Bank*) ["The trustee, rather than the beneficiary, is the client of the attorney who gave legal advice to the trustee," italics omitted]); *Goldberg*, *supra*, 217 Cal.App.3d at p. 1267 [same, for estates].) Defendant accordingly owes plaintiff no duties as her attorney.

However, an attorney can be liable to a nonclient, third party if (1) "the attorney participated in a breach of duty owed by [a trustee-client] and did so for his or her own personal financial advantage" "over and above professional fees earned," or (2) "the attorney violated a separate duty that he or she independently owed to the third party." (*Berg & Berg Enterprises*, *supra*, 131 Cal.App.4th at pp. 827-828.) The first basis is available only if the defendant-attorney made a "conscious decision to participate in tortious activity for the purpose of assisting [the trustee] in performing a wrongful act" and received a benefit beyond his usual fees. (*American Master Lease LLC v. Idanta Partners* (2014) 225 Cal.App.4th 1451, 1475-1476; *Berg & Berg Enterprises*, at pp. 823, fn. 10, 828 [aiding and abetting liability does not require aider and abettor to owe the victim an "independent duty"; conspiratorial liability does].) Plaintiff neither alleged nor adduced proof that defendant obtained more than his usual fees.

Consequently, plaintiff's ability to sue defendant in this case hinges on whether she can invoke the second basis for holding an attorney liable to a nonclient third party by establishing that defendant, as the attorney for the initial and successor trustees,

11

independently owes plaintiff a duty as the beneficiary of Beverly's trust. This plaintiff cannot do.

"As a general rule," as noted above, "an attorney has no professional obligation to nonclients and thus cannot be held liable to nonclients . . . ." (*Moore*, *supra*, 109 Cal.App.4th at p. 1294.) "[U]nder certain circumstances," however, "an attorney may . . . owe a duty to some third party." (*Ibid.*) However, such duties will be implied in law only after "'a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances.'" (*Ibid.*, quoting *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 342.) These considerations include (1) "the extent to which the transaction was intended to affect the plaintiff," (2) "the foreseeability of harm to [the plaintiff]," (3) "the degree of certainty that the plaintiff suffered injury," (4) "the closeness of the connection between the defendant's conduct and the injury suffered," (5) "the moral blame attached to the defendant's conduct," (6) "the policy of preventing future harm," (7) "the likelihood that imposition of liability might interfere with the attorney's ethical duties to the client," and (8) "whether the imposition of liability 'would impose an undue burden on the profession.'" (*Id.* at p. 1295; *Boranian v. Clark* (2004) 123 Cal.App.4th 1012, 1019 (*Boranian*); *Ventura County Humane Society v. Holloway* (1974) 40 Cal.App.3d 897, 903, 905 (*Ventura County Humane Society*).)

Applying these factors, courts have recognized that "an attorney who assumes preparation of a will"—or, for that matter, a trust—"incurs a duty not only to the testator client, but also to [her] intended beneficiaries" that can give rise to liability in tort or in contract (as a third-party beneficiary). (*Ventura County Humane Society*, *supra*, 40 Cal.App.3d at p. 903.) But "the attorney's liability towards the intended beneficiaries . . . is not automatic" (*ibid.*), and "is determined by reference to the attorney-client relationship" between the attorney and the testator. (*Id.* at pp. 903-904; *Heyer v. Flaig* (1969) 70 Cal.2d 223, 229 (*Heyer*), abrogated on other grounds in *Laird v. Blacker* (1992) 2 Cal.4th 606.) Because "the attorney's paramount obligation [to his testator-client] is to serve and carry out the intention of the testator" (*Ventura County Humane Society*, at pp. 904-905; *Heyer*, at p. 228 [noting how "an attorney undertakes to fulfill

12

the testamentary instructions of his client"]), the cases recognizing an attorney's duty to a beneficiary involve instances where the attorney has been negligent in effectuating the testator's intent. Thus, an attorney is potentially liable to intended beneficiaries for not advising a client how a contemplated, post-testamentary marriage would affect the beneficiaries of the client's will (*Heyer*, at pp. 225-229), for drafting a will negligently (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 589-590), and for drafting a trust in a way that incurs additional tax liability (*Bucquet v. Livingston* (1976) 57 Cal.App.3d 914, 922-925).

For the same reasons, courts have been reluctant to create a duty between a testator's attorney and an intended beneficiary in instances not involving the failure to carry out the testator's clearly articulated intent. Consequently, courts have rejected lawsuits by beneficiaries premised on the testator's attorney's (1) failure to clarify which of many humane societies the testator meant to name in his will when the attorney used the specific language for that bequest that the testator specified (*Ventura County Humane Society*, *supra*, 40 Cal.App.3d at pp. 904-905), (2) failure to evaluate the testator's testamentary capacity (*Moore*, *supra*, 109 Cal.App.4th at p. 1290), (3) failure to remind the testator to sign the will the attorney drafted (*Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946, 965), (4) failure to urge the testator to consider alternative plans to forestall potential will contests (*Boranian*, *supra*, 123 Cal.App.4th at pp. 1019-1020), and (5) failure to ascertain whether the testator desired to give a named beneficiary a larger inheritance (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 86 (*Chang*)). In each of these situations, the creation of a duty would have "subjected" the attorney "to conflicting duties" (as between his client (the testator) and the beneficiaries) (*Boranian*, at p. 1020), and to "inevitably . . . speculative" liability because the only witness capable of saying what she intended will necessarily be dead (and hence unavailable) (*Chang*, at p. 86). Plaintiff observes that these cases only involve unnamed beneficiaries, but this observation is inaccurate and irrelevant. *Chang* involved a named beneficiary and, more to the point, the policy concerns underlying every one of these decisions had nothing to do with whether the beneficiary was named or unnamed.

13

In this case, plaintiff seeks to impose liability on defendant for his breach of three duties as an attorney: (1) his failure to ascertain Beverly's testamentary capacity; (2) his drafting of a will and trust that, despite Beverly's signature on the will and trust, did not *really* reflect what she wanted; and (3) his failure to ignore the directions of his clients (the trustees and successor trustees) in favor of what plaintiff wanted.

However, defendant owed *plaintiff* none of those duties. As noted above, *Moore* rejected the notion that the testator's attorney owes a beneficiary a duty to assess the testator's capacity. (*Moore*, *supra*, 109 Cal.App.4th at p. 1290.) *Chang* and *Boranian* refused to require testators to second guess—or even question—the testator's clearly expressed intentions as to what she wants to do with her property. (*Boranian*, *supra*, 123 Cal.App.4th at p. 1020; *Chang*, *supra*, 172 Cal.App.4th at pp. 82-83.) And the final duty plaintiff seeks to impose would, by definition, place a trustee's attorney in an untenable conflict of interest between the trustee (his client) and the intended beneficiary, and would open the floodgates to lawsuits against attorneys by beneficiaries who would prefer to administer the trust differently. This goes far beyond the context of "the attorney-client relationship" between the trustee and his attorney that is, as noted above, the touchstone for any duties to be imposed. (*Ventura County Humane Society*, *supra*, 40 Cal.App.3d at pp. 903-904.)

Contrary to what amicus curiae AltaGolden suggests, our refusal to recognize a duty on the facts of this case does not leave beneficiaries like plaintiff without a remedy when faced with irresponsible trustee's counsel. The trustee, as the attorney's client, can sue an unscrupulous or incompetent lawyer for malpractice. (See *Wells Fargo Bank*, *supra*, 22 Cal.4th at p. 213.) And, if the attorney is colluding with the trustee, the beneficiary can sue the trustee for breach of the trust (Prob. Code, § 16420, subd. (a)(3); *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1068) or, as noted above, potentially sue the attorney for aiding and abetting the trustee's breach.

Because no duty runs between plaintiff and defendant for the injuries alleged in this case, plaintiff's claims fail as a matter of law. We consequently have no occasion to examine whether the litigation privilege (Civ. Code, § 47, subd. (b)) also bars plaintiff's

14

claims or whether plaintiff has made a sufficient evidentiary showing to withstand a motion to strike.  (See *People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12 ["'We review the ruling, not the court's reasoning . . .'"].)  We also decline amicus curiae's invitation to redraft plaintiff's complaint to assert a claim for intentional interference with the expectation of an inheritance because such a claim would fail for the same reason— namely, the absence of any tortious conduct by defendant.  (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1057 [requiring proof, among other things, of interference "conducted by independently tortious means"].)

### DISPOSITION

The judgment is affirmed.  Defendant is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

15